USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/28/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States, <br><br> –v– <br><br> Randy Martinez, <br><br> Defendant. | 12-cr-862-10 (AJN) <br><br> OPINION & ORDER |

ALISON J. NATHAN, District Judge:

In 2014, the Court sentenced Mr. Randy Martinez to a ten-year term of incarceration for his participation in a wide-ranging, multi-member narcotics conspiracy. Mr. Martinez, currently incarcerated at the Metropolitan Detention Center in Brooklyn, New York, now seeks compassionate release pursuant to 18 U.S.C. § 3582(c). For the reasons that follow, the Court DENIES his motion.

I. BACKGROUND

In 2012, the Government charged Mr. Martinez with participation in a multi-member narcotics conspiracy. *See* Dkt. No. 9 (superseding indictment). The Government accused Mr. Martinez of making multiple sales of crack cocaine to undercover officers. *Id.* About one year later, Mr. Martinez pled guilty to conspiracy to distribute and possess with intent to distribute crack, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. *See* Dkt. No. 136. On July 28, 2014, the Court sentenced Mr. Martinez to ten years' imprisonment to be followed by four years of supervised release. *See* Dkt. Nos. 245 (judgment), 253 (Sentencing Tr.).

Mr. Martinez has now served more than half his sentence. He spent a substantial portion of his sentence at FCI Allenwood in Pennsylvania. *See* Dkt. No. 464 at 2. However, in

1

September 2019, Mr. Martinez was indicted on new charges in the Southern District of New York. The Government alleges that Mr. Martinez committed a violent act in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and used a firearm in furtherance of that crime, in violation of 18 U.S.C. § 924(j). *See* No. 19-cr-674 (NRB), Dkt. No. 2. Specifically, the Government accuses Mr. Martinez of the 2011 murder of 16-year-old Davon Jackson, who was killed during a gang shootout in which Mr. Martinez allegedly participated. The murder is alleged to have occurred in October 2011, before the conduct at issue in this case. *Id.* Mr. Martinez's murder case is still pending before Judge Buchwald, and no trial date has yet been set. *See* Dkt. No. 467 at 1. In connection with these charges, Mr. Martinez was transferred to the Metropolitan Detention Center (MDC) in Brooklyn, New York, where he is currently held. *See* Dkt. No. 464 at 2.

On April 24, 2020, Mr. Martinez filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). *Id.* About one month ago, he made the same request to the warden of MDC. *Id.* Ex. A. Mr. Martinez represents that the warden has denied his request. Dkt. No. 464 at 1. In support of his motion, Mr. Martinez submitted his medical records from the Bureau of Prisons dating back to 2017, which indicate that he receives treatment for asthma. *Id.* Ex. B. The Government opposes Mr. Martinez's motion, which is now fully briefed. Dkt. Nos. 467, 468.

## II.     MR. MARTINEZ IS NOT ENTITLED TO COMPASSIONATE RELEASE

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). The compassionate-release statute creates one such exception. Under the recently enacted First Step Act, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure

of the [BOP] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

As a threshold matter, before a compassionate-release motion can be considered on the merits, the defendant must exhaust administrative remedies. The First Step Act provides that courts can consider compassionate-release motions brought by incarcerated defendants only if one of two requirements is met. First, courts can consider such motions "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). Second, courts can consider such motions after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." *Id.* Here, Mr. Martinez submitted his request for compassionate release to the warden on March 28, 2020. *See* Dkt. No. 464, Ex. A. Thirty days have since passed, and the Bureau of Prisons has not exercised its discretion to release Mr. Martinez. The exhaustion requirement is therefore satisfied and does not pose an obstacle to Mr. Martinez's motion.

On the merits, the Court concludes that granting Mr. Martinez compassionate release is not "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), and is not supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A). To begin, Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, No. 02-cr-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). Relevant here, the Sentencing Commission's policy statement and its commentary

on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[1] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

The first of these factors favors Mr. Martinez's early release, as COVID-19 pandemic is certainly an extraordinary circumstance.  As this Court has recognized, "individuals in carceral settings are at particularly high risk for contracting the disease because of the inability to individuals to socially distance, shared communal spaces, and limited access to hygiene products."  *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020); *see also Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020).  COVID-19 may present a heightened risk for Mr. Martinez, because he suffers from asthma and regularly uses an inhaler.  Dkt. No. 464 at 7.  Still, the Government contends that "recent data about COVID-19 has found that asthma is absent among the top COVID-19 risk factors," Dkt. No. 467 at 3, and Mr. Martinez offers no evidence or citation to rebut this point.  Nevertheless, the Court accepts that Mr. Martinez faces a heightened risk due to his asthma.

But the Court cannot conclude that Mr. Martinez "is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).  To the contrary, Mr. Martinez sold

---

[1] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *Ebbers*, 2020 WL 91399, at **1, 4.

crack cocaine as a member of Young Gunnerz (often referred to as YGz), a violent gang that for years engaged in narcotics trafficking and violent crimes in aid of racketeering.  *See* Sentencing Tr. at 29 (noting Mr. Martinez's membership in this "violent gang").  Indeed, Mr. Martinez's pending murder charge arises from that same criminal conspiracy.  As noted, Mr. Martinez is alleged to have engaged in a violent gang shootout while a member of YGz, which resulted in the death of a 16-year-old teenager.

Moreover, Mr. Martinez's lengthy criminal record reflects a pattern of dangerous conduct.  As outlined in the factual recitation of Mr. Martinez's Presentence Investigation Report, which Mr. Martinez did not object to and the Court adopted at sentencing, Mr. Martinez has been convicted of a number of violent crimes, including robbery involving force, as well as many non-violent crimes.  PSR at 10–14; *see* Sentencing Tr. at 4–5.  As the Court explained at sentencing, Mr. Martinez "has engaged in repeated criminal conduct since the age of 15 . . . His prior offenses include possession of a loaded firearm near a school and . . . violent felony robberies."  Sentencing Tr. at 29.  The Court described this history as an "escalating pattern of criminality and violence," and stated that it "must be addressed through a substantial sentence."  *Id.* at 29–30.  Given this criminal history, the Guidelines designated Mr. Martinez as a career offender at the time of sentencing.  *Id.*

When presented with motions for compassionate release due to COVID-19 brought by defendants with violent criminal histories, courts in this District have generally concluded that the Sentencing Commission's guidance cuts against granting release.  *See, e.g.*, *United States v. Martin*, No. 18-CR-834-7 (PAE), 2020 WL 1819961, at *4 (S.D.N.Y. Apr. 10, 2020) ("Although the prospect of contracting COVID-19 undeniably presents a serious risk to Martin's health, his release some 50 months early would exposes the community to a serious and unacceptable risk

5

that he would resume violence."); *United States v. Butler*, No. 19-cr-834-10 (PAE), 2020 WL 1689778, at *2 (S.D.N.Y. Apr. 7, 2020). The Court reaches the same conclusion here.

The Court further concludes that the § 3553(a) factors favors do not favor compassionate release. Two such factors, to be sure, are the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). These factors favor Mr. Martinez's early release in light of the COVID-19 pandemic for the reasons discussed above. However, they are outweighed by several other factors: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." For the reasons stated in detail at Mr. Martinez's sentencing, a sentence in the range of ten years' imprisonment was necessary to achieve those goals. Indeed, that sentence was *substantially* below the Guidelines range of 188–235 months' imprisonment. Sentencing Tr. at 27. As the Court explained: "To protect the community, to deter Mr. Martinez and others from engaging in this kind of criminal activity, to promote respect for the law and provide just punishment for the offense, [the Court had] no doubt that a substantial period of incarceration [was] necessary." Sentencing Tr. at 29. Granting Martinez's compassionate-release motion, when he is more than a year away from completing his carceral term, would disserve these important § 3553(a) factors. *Accord Butler*, 2020 WL 1689778, at *3 (denying compassionate release motion for defendant diagnosed with asthma where defendant had served only 15 months of a 60-month sentence).

In sum, both the Sentencing Commission's guidance and the § 3553(a) factors favor cut against Mr. Martinez's request for compassionate release. The Court accordingly denies release at this time.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Mr. Martinez's motion for compassionate release. This resolves Dkt. No. 464.

SO ORDERED.

Dated: April 28, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge